# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

DONALD WATKINS,                    )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )          Case No. CIV-22-718-D
                                   )
PROPERTY MANAGEMENT SERVICES,      )
INCORPORATED, *et al*.,            )
                                   )
        Defendants.                )

## ORDER

Currently pending before the Court is Defendants' Motion for Summary Judgment [Doc. No. 42] under Fed. R. Civ. P. 56.  Defendants seek a judgment in their favor on Plaintiff's claims alleging racial discrimination in violation of 42 U.S.C. § 1982 and the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, and FHA retaliation under § 3617.  Using the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Defendants assert that Plaintiff cannot establish a *prima facie* case of discrimination or retaliation, and cannot show their asserted reasons for excluding him from rent-to-own housing or terminating his month-to-month lease are pretextual.

Plaintiff, who appears *pro se*, initially responded by filing a document titled, "Plaintiff's Summary Judgment Rule 56(d) Request" [Doc. No. 46].[1]  Plaintiff asserted that he lacked necessary information to oppose Defendants' Motion and asked the Court to

---

[1] Plaintiff supported this request with a separately filed Declaration [Doc. No. 47] and Exhibits [Doc. No. 49].

postpone a summary judgment ruling until he obtained additional discovery.  Defendants

filed a Response [Doc. No. 51] opposing any delay.  In reply, Plaintiff made an alternative

request to set a summary judgment response deadline of September 9, 2023.  *See* Pl.'s

Reply Summ. J. Continuance [Doc. No. 55] at 5.  Consistent with this request, Plaintiff

filed on September 7, 2023, his "Opposition Motion to Defendants' Summary Judgment"

[Doc. No. 56].  Under the circumstances, and liberally construing Plaintiff's *pro se* papers,

the Court finds that his "Rule 56(d) Request" and "Opposition Motion" should be treated

as timely responses to Defendants' Motion.[2]

## Standard of Decision

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit

under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A

dispute is genuine if the evidence is such that a reasonable jury could return a verdict for

either party."  *Id*. at 255.  All facts and reasonable inferences must be viewed in the light

most favorable to the nonmoving party.  *Id*.  If a party who bears the burden of proof lacks

sufficient evidence on an essential element of a claim, all other factual issues concerning

the claim become immaterial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[2] The Court previously granted a motion by Plaintiff to consider both filings.  *See* 10/19/23
Order [Doc. No. 75] at 3 ("Plaintiff's prior summary judgment filings are accepted for
consideration").

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id*. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Plaintiff's Claims

Plaintiff first claims that Defendants violated the FHA and § 1982 by denying him access to a rent-to-own housing program operated by Defendant Property Management Services, Inc. ("PMSI") based on his race, color, and sex (Black, African-American male).[3] Specifically, Plaintiff alleges that he was falsely told by Defendants Kristen Jones and Matthew Wensaur and PMSI employees acting on its behalf, that 1) no rent-to-own properties were available, 2) specific properties about which he inquired were not available, and 3) he had not followed PMSI's procedure to apply. *See* Compl. ¶¶ 40-42.

---

[3] Unlike the FHA, Section 1982 bars only racial discrimination. *See Jones v. Alfred H. Mayer Co*., 392 U.S. 409, 413-14 (1968).

Plaintiff also alleges that Defendants violated the FHA and § 1982 by carrying out an "expedited" eviction that was contrary to PMSI's practice of allowing a renter to cure an untimely payment and so excluded Plaintiff from its rent-to-own housing program based on his race, color, and sex. *Id*. ¶¶ 43-44.

Second, Plaintiff claims Defendants retaliated against him in violation of the FHA by initiating the eviction proceeding after he complained about being excluded from rent-to-own housing because of his race, color, and sex and, specifically, complained of an FHA violation. *Id*. ¶¶ 45-46. As relief for both claims, Plaintiff seeks compensatory damages and punitive damages against each defendant.

<h3 align="center">Statement of Undisputed Facts</h3>

Some material facts appear to be undisputed.[4] PMSI manages 300 residential rental units, of which more than half are occupied by "Black, Hispanic, or Native-American" tenants. *See* Jones Decl. [Doc. No. 42-6], ¶ 3. During this case, six of PMSI's eleven employees are Black. Plaintiff rented two residential properties managed by PMSI, moving from a house that was sold by the owner to another available house. When his six-month lease for the second house expired, Plaintiff elected not to sign another lease but remained in the house as a month-to-month tenant. Plaintiff did not renew the six-month lease while waiting for a rent-to-own property to become available. *See* Compl. [Doc. No. 1] ¶ 11; Answer [Doc. No. 12], ¶ 4.

---

[4] The Court states only material facts that are properly presented by Defendants and not opposed by Plaintiff in the manner required by Rule 56(c)(1) and LCvR56.1(d).

PMSI offers some properties on a rent-to-own basis at the election of the property owner.  Over sixty percent of PMSI's tenants who are participating in or have completed its rent-to-own program "are Black or Hispanic."  *See* D. Brent Wensauer Decl. [Doc. No. 42-1] ¶ 15.  While Plaintiff was renting the second house from PMSI, he inquired numerous times about participating in the rent-to-own program.  His house was not offered as a rent-to-own property.  Plaintiff was unsuccessful in identifying an available rent-to-own property managed by PMSI, and he never submitted an application.

Although disputed, Plaintiff provides evidence to show that his lack of success was caused by conduct of PMSI employees who prevented him from identifying available rent-to-own properties and submitting an application.  Plaintiff demonstrates that he received inconsistent responses to questions about applying for rent-to-own housing – including conflicting information about the application process from different PMSI employees or the same employees on different occasions – and that he requested an application.  Plaintiff provides video- and audio-recordings of interactions from June 10, 2022, through June 18, 2022, documenting reasons he was given for unavailability of rent-to-own properties.[5] Plaintiff points out that his behavior was not given as a reason for withholding information or an application for rent-to-own housing before this case was filed and Defendants did not document any alleged incidents of misbehavior.

---

[5] Consistent with Defendants' position that Plaintiff frequently made repeated telephone calls to PMSI's office, Plaintiff's evidence shows he called at least eight times in one week (four times on a single day).

Also disputed, Defendants provide numerous affidavits of PMSI employees stating that the office staff who interacted with Plaintiff (including Defendant Jones and leasing agent Inez Shaw, who is Black), and others who witnessed his behavior, viewed it as rude, abrasive, demanding, insulting, or abusive. Defendant Wensauer states he took calls from Plaintiff at the request of female leasing agents, and on two occasions asked Plaintiff to leave the leasing office due to his behavior. Consistent with Defendants' position, Plaintiff states in an email communication dated June 9, 2022, that a supervisor with whom he spoke by telephone accused him (in his view, falsely) of harassing behavior and threatened to call the police. *See* Defs.' Mot., Ex. 8 [Doc. No. 12-8] at 1 (ECF page numbering). Consistent with Plaintiff's position, Defendant Wensauer answered a call from Plaintiff on June 18, 2022, asking to speak to a supervisor and questioning why he was told properties listed as rent-to-own were unavailable; Defendant Wensauer said Plaintiff had not followed the proper procedure (first checking out a key to view a property) and terminated the call.

PMSI's decision to terminate Plaintiff's month-to-month tenancy was made by its president, D. Brent Wensauer (not Defendant Wensauer). Mr. Wensauer explains his decision as a "response to the pleas of PMSI's leasing agents who took the brunt of [Plaintiff's] abuse" and "a desire to avoid the confrontations with Plaintiff that had become the norm." *See* D. Brent Wensauer Decl. ¶¶ 13, 16 and 18. Defendant Jones and Inez Shaw requested the lease termination, allegedly to avoid Plaintiff's harassment (which he denies occurred). A 30-day notice of termination of Plaintiff's tenancy was issued on June 18, 2022, the same day of the recorded conversation with Defendant Wensauer and the same day Plaintiff sent an email alleging that PMSI was engaging in discriminatory

practices.  The termination notice was served on June 20, 2022, the same day that Plaintiff sent an email message to Defendant Wensauer complaining of an FHA violation and retaliation.  Plaintiff did not make any lease payments after the notice.  PMSI filed a civil action on July 14, 2022, to evict Plaintiff from his rental property and collect unpaid rent.

## Discussion

### A.    Discrimination

Defendants assert that Plaintiff's claims alleging discrimination based on race in violation of FHA and § 1982 do not survive a burden-shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[6]  *See Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989) (*McDonnell Douglas* "has been widely applied to FHA and § 1982 claims"); *see also Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012) (*McDonnell Douglas* is "entrenched" in the FHA context).  The first step in the analysis requires a plaintiff to "come forward with proof of a prima facie case of discrimination."  *Asbury*, 866 F.2d at 1279.  To establish a *prima faci*e case, Plaintiff generally must show:

> (1) [he] is a member of a racial minority;
>
> (2) [he] applied for and was qualified to rent an apartment or [house];
>
> (3) [he] was denied the opportunity to rent or to inspect or negotiate for the rental of a [house] or apartment; and
>
> (4) the housing opportunity remained available.

---

[6] Defendants only address racial discrimination, presumably because Plaintiff does not belong to a protected class based on gender. However, the issue of pretext, discussed *infra*, would apply to the analysis of any FHA claim.

*Id*. at 1279-80.[7]

Defendants assert that Plaintiff cannot establish the second element of a racial discrimination claim based on his alleged exclusion from PMSI's rent-to-own housing. Defendants contend Plaintiff cannot show "he met all relevant qualifications necessary for engaging in the rent-to-own program." *See* Defs.' Mot at 8. This argument is not based on PMSI's eligibility criteria for rent-to-own housing but, instead, on facts presented to show Plaintiff "would have been a poor candidate" for the program because the option to buy terminates if an eviction proceeding is filed and Plaintiff had been the subject of eviction proceedings in the past. *See* Def.'s Mot. at 5, ¶ 22. Defendants do not contend Plaintiff lacked a necessary qualification for PMSI's rent-to-own program and they provide no facts to suggest that Plaintiff failed to meet any particular eligibility requirement. In light of Defendants' failure to identify a qualification for rent-to-own housing that was

---

[7] These elements are appropriate for a refusal to rent or making unavailable or denying housing because of race or other protected status. *See* 42 U.S.C. § 3604(a). But FHA also prohibits "represent[ing] . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." *Id.* § 3604(d). In this situation, which was alleged in *Asbury* and is asserted here, the person is prevented from making an application, and the actual submission of an application is not required. *See Asbury*, 866 F.2d at 1280 (manager misrepresented availability of rental housing and refused to provide application); *see also Neuifi v. Snow Garden Apartments*, No. 2:12-CV-00774, 2014 WL 7405472, *9 (D. Utah Dec. 30, 2014) (second and third elements under § 3604(d) are: "(2) plaintiffs requested information on the availability of a particular type of apartment; [and] (3) defendants failed or refused to provide truthful information about the availability of such apartments"). To the extent Defendants contend Plaintiff's claim fails because he never applied for a rent-to-own property (Defs.' Mot. at 9), this argument does not fit Plaintiff's claim that Defendants prevented him from applying by misrepresenting the availability of rent-to-own properties. Thus, the Court addresses only Plaintiff's qualification for the program.

unmet, the Court finds that Defendants have not carried their burden under Rule 56 to show they are entitled to summary judgment on this basis.[8]

Alternatively, Defendants assert that legitimate, nondiscriminatory reasons exist for Plaintiff's exclusion from the rent-to-own program and that Plaintiff cannot show these reasons are pretextual.  *See* Def.'s Mot. at 10-13.  Although not clearly articulated, the following reasons can be gleaned from Defendants' argument:  1) Defendants do not control which properties are included in PMSI's rent-to-own program, and the residence Plaintiff was renting was never offered on a rent-to-own basis; 2) Defendants never denied Plaintiff the opportunity to participate in the rent-to-own program because he never applied; 3) Plaintiff was not a good candidate for the program due to a history of nonpayment and evictions; and 4) Plaintiff's hostile conduct toward PMSI's employees and mistreatment of its staff resulted in a decision to evict Plaintiff and "no longer rent" to him at all.  *Id*. at 10-11.

From the Court's perspective, Defendants' first three reasons do not fit the factual allegations underlying Plaintiff's discrimination claim.  The first two reasons are not responsive at all; Plaintiff does not claim Defendants discriminated against him by denying a rent-to-own contract on the house he was leasing or denying his application for a rent-to-own property.  He claims Defendants withheld or misrepresented information regarding the availability of rent-to-own properties and prevented him from applying.  The third

---

[8] Defendants also seem to argue that Plaintiff cannot satisfy the third element because he was never denied an opportunity to inspect or apply for rent-to-own housing, but Plaintiff has demonstrated that a genuine dispute of material fact exists as to whether Defendants prevented him from identifying and applying for an available rent-to-own property.

reason, as discussed *supra*, is not supported by facts showing any specific program criteria and instead speculates about what might have happened if Plaintiff had succeeded in submitting an application for an available property.

The Court finds Defendants' fourth reason – Plaintiff's misbehavior – is the only one directed at Plaintiff's discrimination claim that is supported by the record.  However, Defendants argue only that Plaintiff's behavior was the reason why PMSI decided to evict him from the property he was renting.  It is not presented as a reason for misrepresenting to Plaintiff the availability of rent-to-own housing, which is not addressed in the Motion. Thus, the Court considers this reason only with regard to Plaintiff's claim that his eviction was motivated by discrimination.

Proceeding to the issue of pretext, the Court finds upon careful consideration of the facts and evidence – even when viewed in the light most favorable to Plaintiff, as required by Rule 56 – that Plaintiff has not come forward with sufficient facts to show the existence of a genuine issue of material fact.

"A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in [the decisionmaker's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011) (internal quotation omitted); *see Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014).  "Although a plaintiff need not employ any particular approach to show the defendant's stated reason . . . is pretextual, [the Tenth Circuit] identified three typical methods in *Kendrick v. Penske Transportation Services, Inc.*[, 220 F.3d 1220, 1230

(10th Cir. 2000)]: (1) evidence that the defendant's stated reason . . . was false; (2) evidence that the defendant acted contrary to a written . . . policy prescribing the action to be taken by the defendant under the circumstances; or (3) evidence that the defendant acted contrary to an unwritten policy or contrary to [a customary] practice when making the . . . decision affecting the plaintiff." *Macon*, 743 F.3d at 714. "In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation." *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (internal quotation omitted). The relevant question is not whether the decisionmaker's "proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Id*. (internal quotation omitted).

In this case, Plaintiff does not address – and so presents no facts to discredit Defendants' explanation for his eviction – that Mr. Wensauer believed that Plaintiff's conduct toward PMSI staff had reached a point that warranted terminating Plaintiff's month-to-month tenancy and removing him from its rental housing. Plaintiff vigorously denies that he behaved in the manner described by Defendants' witnesses and conducted himself in a way that warranted eviction. But Plaintiff presents no facts to show that *Mr. Wensaur* did not honestly believe that such conduct had occurred.

Plaintiff alludes in his response to PMSI's past practice of accepting late lease payments. *See* Pl.'s Resp. Br. at 7-8 (ECF page numbering). Assuming Plaintiff seeks to show pretext based on an alleged failure to follow an unwritten or informal policy, he "must show, first, that [PMSI] had such a policy, and second, that [PMSI] did not follow that

policy." *Lobato*, 733 F.3d at 1289-90.  Plaintiff makes no showing of PMSI's policy regarding termination of month-to-month tenancies or withholding evictions to permit late payments.  He admits that he did not pay rent after he received PMSI's 30-day notice of termination, and does not contend he asked for an opportunity to cure the nonpayment.

For these reasons, the Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact regarding his claim of unlawful discrimination by Defendants in terminating his month-to-month tenancy and evicting him from PMSI's rental housing.

## B.   Retaliation

Defendants also seek summary judgment on Plaintiff's FHA retaliation claim under § 3617 using a *McDonnell Douglas* analysis.  To establish this claim, a plaintiff must show:

(1) he was engaged in protected activity;

(2) he suffered an adverse action in the form of coercion, intimidation, threats, or interference; and

(3) there was a causal link between the two.

*Dubois v. Ass'n of Apartment Owners*, 453 F.3d 1175, 1180 (9th Cir. 2006).[9]  "A violation of Section 3617 may be shown even absent other violations of the FHA."  *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1188 (D. Colo. 2016); *see Watters v. Homeowners' Ass'n at Preserve at Bridgewater*, 48 F.4th 779, 785 (7th Cir. 2022).

---

[9] Although the Court uses Defendants' analysis for purposes of a summary judgment ruling, the Court recognizes that the Tenth Circuit has not adopted a particular framework and there is a split of authority.  *See Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379, *8 & n.5 (10th Cir. July 6, 2022) (acknowledging undecided question of § 3617 standard and using four-part test from *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (en banc)); *cf. Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112-13 (3d Cir. 2017) (stating three-part test similar to *Dubois*).

Defendants assert that Plaintiff cannot identify an FHA-protected activity because "[a]sking to participate in a rent-to own program" and "[b]eing terminated from a month-to-month lease" are not protected activities.  *See* Def.'s Mot. at 14.  By omitting any mention of Plaintiff's evidence that he complained of discriminatory practices in violation of the FHA before his eviction, Defendants apparently take the position that this complaint also is not protected activity.  Although there is no Tenth Circuit rule and other courts are not in complete agreement, there is legal authority holding that protected activity includes opposing a practice that is reasonably believed to be discriminatory.  *See*, *e.g.*, *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1262 (10th Cir. 2021) (retaliation claim based on opposition to conduct believed to be unlawful under Title VII).[10]

Assuming Plaintiff has made a *prima facie* showing of retaliation, the burden shifts to Defendants to articulate a nonretaliatory reason for the adverse action.  Defendants again identify the reason for their action was Plaintiff's conduct:  "Plaintiff had a history of rude and confrontational behavior and his month-to-month lease was cancelled as a result of such conduct."  *See* Def.'s Mot. at 15.

Proceeding to the issue of pretext, the Court finds that Plaintiff has not demonstrated a genuine dispute of material fact on this issue, even when viewing the record in his favor

---

[10] Defendants do not address the other elements of a *prima facie* case.  They apparently concede the termination of Plaintiff's month-to-month tenancy was an adverse action, and a causal connection can be established by close temporal proximity.  *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.").  Here, Plaintiff's opposition to alleged FHA discrimination was followed closely by PMSI's notice of lease termination.

as required by Rule 56.  Despite close timing between PMSI's notice of termination and Plaintiff's allegation of an FHA violation, Plaintiff has not come forward with any facts or evidence to counter Defendants' undisputed evidence that Mr. Wensauer made the decision to terminate Plaintiff's tenancy, to show that Mr. Wensauer was aware of any protected activity when the decision was made, or to draw into question whether Mr. Wensauer honestly believed that Plaintiff's behavior, as reported to him by Defendant Jones and Inez Shaw, warranted the termination of Plaintiff's month-to-month tenancy.[11]  The Court finds no basis in the summary judgment record to support a reasonable finding that Plaintiff's exercise of FHA rights played any part in PMSI's eviction of him from its rental housing.

## Conclusion

For these reasons, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material facts regarding his claims that Defendants violated the FHA and § 1982 by causing a discriminatory and retaliatory termination of his month-to-month tenancy, and thus Defendants are entitled to summary judgment on these claims.  Defendants have not shown their entitlement to summary judgment on Plaintiff's claim that Defendants violated § 3604(d) of the FHA by falsely representing that rent-to-own rental housing was not available to Plaintiff based on his race, color, and gender.

---

[11]  Plaintiff cites, but makes no effort to apply, the Seventh Circuit's test.  *See* Pl.'s Resp. Br. at 12 (ECF page numbering).  This test also requires, in relevant part, that "(3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of [their] protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Watters*, 48 F.4th at 785.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 42] is **GRANTED in part**.  Plaintiff's FHA claim under 42 U.S.C. § 3604(d) remains pending.

**IT IS SO ORDERED** this 16th day of February, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge